UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| MALIK HODGE | ) | |
| 710 12th STREET, NE | ) | |
| WASHINGTON, D.C. 20002 | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 08-232 (CKK)** |
| **v.** | ) | |
| | ) | |
| UNITED AIRLINES | ) | |
| 1200 EAST ALGONQUIN ROAD | ) | |
| ELK GROVE TOWNSHIP, IL 60007 | ) | |
| | ) | **Jury Trial Demand** |
| **Defendant.** | ) | |
| | ) | |

## Plaintiff's First Amended Complaint

Comes now Plaintiff Malik Hodge, by and through his attorneys, and sues United Airlines and for his first amended complaint states as follows.

This action seeks declaratory, injunctive and equitable relief, and compensatory and punitive damages for disparate treatment suffered by Hodge in his position with United Airlines.

## Jurisdiction and Venue

1.    This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 in that the subject matter arises under the laws of the United States, 42 U.S.C. § 1981, 1988 and 2000e et seq. (Title VII).

## Venue

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Hodge's claims occurred in this judicial district and Defendant may be found in this judicial district.

## Parties

3.     Malik Hodge is a citizen of the United States and a resident of the District of Columbia.  At all pertinent times, Defendant employed Hodge as a flight attendant with United Airlines.

4.     Defendant United Airlines is and at all times hereto a corporation engaged in the business of passenger airline travel with its headquarters in Illinois.

## Factual Allegations

5.     Plaintiff Hodge, an African American male, began employment with United Airlines on February 26, 1995.  Mr. Hodge held the position of flight attendant until his unlawful termination on March 10, 2005.  Mr. Hodge was assigned to international flights from San Francisco to Hong Kong.

6.     During the last three years of his employment, Mr. Hodge was subjected to harassment based on his race and ethnic appearance.  On or around May 21, 2002, Domicile Manager Steve Pais, a Caucasian male, complained that Mr. Hodges' hair, dreadlocks, did not meet company regulations.  Mr. Hodge responded that his hair met the company guidelines in that his "locks" were "tamed" and in a "uniform series of twists" not extended past the top of his collar.  Mr. Hodge attempted to accommodate Mr. Pais' concerns and began to wear cornrows that also complied with company hair guidelines.

7.      On March 26, 2002, Wendy Cheung, In-Flight Supervisor, expressed concern over Mr. Hodge's hair because she claimed that it was falling in his face. Mr. Hodge responded that he would control his hair with a hair pin and Cheung indicated that she had no further problem with it. Pais later informed Mr. Hodge that his hairstyle was intended for females. On April 6, 2002, Hsu informed Mr. Hodge that management had approved his wearing of a headband to keep his hair off his face. Despite his attempts to please management, Mr. Hodge was subjected to further harassment regarding his hair by In-Flight Supervisors and Mr. Pais.

8.      On July 17, 2004, Mr. Hodge, arrived for work 35 minutes before check-in time and reported to Mr. Pais as Pais had instructed. Pais removed Mr. Hodge from a flight schedule because of his hair, which was in a style which complied with United's regulations. To avoid creating an issue, Mr. Hodge offered to wear an Afro wig. Pais did not return Mr. Hodge to schedule, even after Mr. Hodge wore a short Afro wig in compliance with hair guidelines and was in uniform prior to check-in time. Pais prematurely removed Mr. Hodge from schedule and did not afford him an opportunity to meet Pais' arbitrary compliance standards even though Mr. Hodge had sufficient time to do so. Pais later approved the Afro wig in July 2004 after the length of the hair on the wig was cut.

9.      In March 2003, Mr. Hodge, while on duty in Chicago and because of extremely cold weather, put on an ear wrap after all passengers left the aircraft, before exiting the aircraft. The ear wrap contained the letters "N" and "Y" to represent the New York Yankees baseball team. Gate Agent Carol O'Shea, a Caucasian female, filed a complaint against Mr. Hodge in an email to her supervisor, Carol Bertacchi. She

requested "help" in the matter and inaccurately identified Mr. Hodge's NY ear wrap as apparel with an affiliation with Louis Farrakhan and the Nation of Islam.

10.     On October 20, 2004, Mr. Hodge sustained injuries from an automobile accident in the District of Columbia.  Mr. Hodge began receiving physical therapy for his injuries on or near October 29, 2004 and notified his employer of his need for medical care. Mr. Hodge continued to receive therapy for the next two months.

11.     Mr. Hodge returned to work for Defendant in December 2004, despite his injuries and ongoing treatment.  Mr. Hodge's return to work required that he decrease his physical therapy.  As a result, he suffered a recurrence of the injury to his back, which left him in a debilitating state on December 23, 2004.  As a result of his injuries, Mr. Hodge's physicians restricted him from work activities, beginning December 23, 2004.

12.     While Mr. Hodge was out of work with the injury and awaiting treatment on his back, Ann Hsu, In-Flight supervisor, sent an email message on January 6, 2005 to Mr. Hodge, indicating that she had made several unsuccessful attempts to reach him and instructing Mr. Hodge to provide medical documentation for his absence from work before 5:00 p.m. on Friday, January 7, 2005.  This email was followed by a second email from Hsu, dated January 18, 2005, instructing Mr. Hodge to provide extensive medical documentation on physician's letterhead and signed by his treating physician.  Due to his injuries and medical treatment, Mr. Hodge was unable to check his email on a regular basis.  Defendant thereafter solicited, without Mr. Hodge's permission, confidential medical information from his physician.

13.     While out on leave, Mr. Hodge inquired at the Flight Attendant Service Center if he needed to leave a contact number and was told it was unnecessary.  Although

Hsu claims that she made several attempts to reach Mr. Hodge by telephone during his leave, Hsu's attempted calls were made to Mr. Hodge's residence in Hong Kong, while Mr. Hodge was in Washington, D.C.  Mr. Hodge first became aware that Ms. Hsu was attempting to reach him on or about January 11, 2005 when he was notified by his father in New York that a FedEx package had arrived from the Defendant containing a Letter of Charge.  After retrieving the package, Mr. Hodge faxed the requested medical documents to company management on January 12 and 18, 2005.  In February 2005, Mr. Hodge filed an internal complaint a race discrimination against United Airlines.

14.     On February 18, 2005, management conducted a hearing, charging Mr. Hodge with unauthorized absence from work, invalid sick leave, and failure to comply with a written directive.  Mr. Hodge was terminated on March 10, 2005.  At the same time Mr. Hodge was issued charges by United, a similarly situated Caucasian male employee was absent from work without leave.  Unlike the Caucasian colleague who was took unauthorized leave and was given an opportunity to address and resolve charges before proceeding to a hearing, Mr. Hodge was terminated immediately on March 10, 2005 without the same process afforded the Caucasian employee.

<u>**Count I**</u>

**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e-2(a)**
**Race Discrimination and Retaliation**

Hodge adopts by reference each of the allegations in Paragraphs one through fourteen above.

15.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment because of such individual's color, religion, sex, age, or national origin or to limit, segregate, or classify his employees or applicants for employment opportunities or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin. Title VII also prohibits retaliation because an employee protests discriminatory treatment.

15.    At all pertinent times, Defendant was an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

16.    At all pertinent times, Hodge was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

17.    Defendant and through its agents knowingly and intentionally engaged in unlawful discrimination and retaliation based on Hodge's race by subjecting Hodge to disparate treatment and a hostile work environment, including but not limited to subjecting Mr. Hodge to harassment and a hostile work environment based on his race as detailed above, issuing Mr. Hodge unwarranted discipline, and terminating his employment after he filed a complaint of discrimination.   On February 18, 2005, management conducted a hearing, charging Mr. Hodge with unauthorized absence from work, invalid sick leave, and failure to comply with a written directive.  Mr. Hodge was terminated on March 10, 2005.  At the same time Mr. Hodge was issued charges by United Airlines, a similarly situated Caucasian male employee was absent from work without leave.  Unlike the Caucasian colleague who was took unauthorized leave and was given an opportunity to address and resolve charges before proceeding to a hearing, Mr. Hodge was terminated immediately on March 10, 2005 without the same process

afforded the Caucasian employee.  The treatment to which Hodge was subjected was embarrassing, intimidating, oppressive, hostile, and offensive, which interfered with his emotional well being.

18.     The conduct of the Defendant, by and through the conduct of its agents, deprived Plaintiff Hodge of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

19.     As a direct, natural, proximate, and foreseeable result of the actions of Defendant, Plaintiff Hodge has suffered past and future pecuniary losses, emotional pain and suffering, inconvenience mental anguish, loss of enjoyment of life, and other nonpecuinary losses.

Wherefore, Plaintiff prays that the Court will:

A.  Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

B.  Enjoin Defendant from unlawful discriminatory practices against employees based on gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

C.  Grant Plaintiff judgment for back pay and front pay and/or reinstatement, compensatory and punitive damages against Defendant.

D.  Grant Plaintiff his costs and a reasonable award of attorneys fees.

## Count II

## Violation of the Family and Medical Leave Act of 1990

Hodge realleges and incorporates the allegations of all paragraphs above as if fully set forth herein.

20.     The Family and Medical Leave Act ("FMLA"), 29 C.F.R. 825 et seq., requires all employers of twenty or more employees to provide up to twelve weeks of unpaid family leave for the birth of a child, adoption or foster care, or to care for a seriously ill family member and up to twelve weeks of unpaid medical leave to recover from a serious illness rendering the employee unable to work.  The leave may also be taken intermittently, in the case of a serious health condition, as defined in FMLA. FMLA further prohibits an employer from obtaining an employee's confidential medical files without the employee's permission.

21.     At all pertinent times, United Airlines was an employer subject to provisions of  Family and  Medical Leave Act.

22.     At all pertinent times, Hodge was an employee entitled to invoke his rights under the Family and Medical Leave Act.

23.     FMLA prohibits an employer from denying an employee his or her rights under this Act and requires leave if an employee suffers an injury and is unable to perform the functions of his position.

24.     In October 2004, Mr. Hodge reported to Defendant United a serious back injury, which required extensive treatment.  Mr. Hodge submitted a request from his physician for medical leave.  In December 2004, Hodge advised United that he suffered a debilitating injury and could not perform the functions of his job.  In violation of FMLA, Defendant knowingly and intentionally rejected or refused to accept a request for leave for medical attention and ultimately terminated Mr. Hodge's employment.   In addition, Defendant's doctor contacted Hodge's doctor without Hodge's consent to obtain

information about his medical condition.  The treatment to which Mr. Hodge was subjected was not applied to any other employee.

25.    Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

26.    Defendant had no legitimate business reason for any of such acts.

WHEREFORE, Plaintiff prays as follows:

A.    That the Court enter judgment against the Defendant;

B.    That the Court award to Hodge damages in an amount equal to all of his accumulated lost wages and benefits, including back pay, front pay, and benefits; compensatory damages for the financial and emotional harm caused by defendants, including prejudgment and post-judgment interest; and any other damages permitted under the FMLA;

C.    Award payment of all fees, costs, and expenses, including attorney's fees and expert fees;

D.    Reinstatement of Hodge to his position with the Defendant; and

E.    That the Court award Hodge such other relief as to which he may be deemed entitled.

### Count III

### Wrongful Discharge

Hodge incorporates by reference Paragraphs 1 through 26 as if fully stated herein.

27.    At all pertinent times, Hodge was a citizen and resident of the District of Columbia.  United Airlines was a private employer and subject to the laws and public policy of the District of Columbia. At all pertinent times, Hodge was an employee

entitled to protection against termination in violation of the public policies of the District of Columbia.  In the District of Columbia, court and statutory authority establish as public policy that employers are prohibited from terminating employees because of their race and because they take emergency medical leave for a serious medical condition.  On February 18, 2005, management conducted a hearing, charging Mr. Hodge with unauthorized absence from work, invalid sick leave, and failure to comply with a written directive.  Mr. Hodge was terminated on March 10, 2005.  At the same time Mr. Hodge was issued charges by United, a similarly situated Caucasian male employee was absent from work without leave.  Unlike the Caucasian colleague who was took unauthorized leave and was given an opportunity to address and resolve charges before proceeding to a hearing, Mr. Hodge was terminated immediately on March 10, 2005 without the same process afforded the Caucasian employee.   Plaintiff Hodge was terminated because he was injured and unable to work and was required to take emergency medical leave.

28.     In addition, Hodge was employed under a labor contract, which set forth specific procedures for termination of employees.  Under this procedure, United Airlines established a disciplinary and grievance process which requires notice and an opportunity to be heard on grievances before issuance of a final decision.  At the time of his termination, Hodge was a permanent employee.  Even though there was not lawful cause to dismiss Hodge, his job termination was summary and without proper process due him.  Further, Hodge was denied an opportunity to have his grievance heard before his termination.

WHEREFORE, Plaintiff prays as follows:

A.     That the Court enter judgment against the Defendant;

B.      That the Court award to Hodge damages in an amount equal to all of his

accumulated lost wages and benefits, including back pay, front pay and benefits;

compensatory damages for the financial and emotional harm caused by defendants,

including prejudgment and post-judgment interest and any other damages permitted

under the  FMLA;

C.      Award payment of all fees, costs, expenses, including attorney's fees and expert

fees;

D.      Reinstatement of Hodge to his position with the Defendant; and

E.      That the Court award Hodge such other relief as to which he may be deemed

entitled.

**Count IV**

**<u>Breach of Contract</u>**

Hodge incorporates by reference Paragraphs 1 through 28 as if fully stated herein.

29. Hodge was employed with United Airlines through an express or implied

employment contract.  Under this employment contract, United Airlines established a

non-discrimination policy and equal treatment of employees and a disciplinary and

grievance process which requires notice and an opportunity to be heard on grievances

before issuance of a final decision.  At the time of his termination, Hodge was a

permanent employee.  Even though there was not lawful cause to dismiss Hodge, his job

termination was summary and without proper process due him.  Further, Hodge was

denied an opportunity to have his grievance heard before his termination.

30. United Airlines breached material terms of the employment contract in

11

terminating Hodge without proper process due him, and Hodge was denied an opportunity to have his grievance heard before his termination.    Moreover, on February 18, 2005, management conducted a hearing, charging Mr. Hodge with unauthorized absence from work, invalid sick leave, and failure to comply with a written directive.  Mr. Hodge was terminated on March 10, 2005.  At the same time Mr. Hodge was issued charges by United, a similarly situated Caucasian male employee was absent from work without leave.  Unlike the Caucasian colleague who was took unauthorized leave and was given an opportunity to address and resolve charges before proceeding to a hearing, Mr. Hodge was terminated immediately on March 10, 2005 without the same process afforded the Caucasian employee.

31.    Defendant United Airlines was aware that damages would necessarily flow from the breach of the employment contract.

Wherefore, Hodge requests the Court's judgment and requests that the Court:

a.    Find that United Airlines breached Hodge's employment contract, reinstate Hodge to employment in the position he held prior to his termination, and award monetary damages against Defendant;

b.  Provide Hodge all lost earnings and benefits associated with his employment. Hodge demands back pay through the date of his reinstatement, restoration of all other job-related benefits and compensation for the losses thereof;

c.  Award the costs of litigation, including attorneys fees, costs, and expert fees, and such other and further relief as may be appropriate and fair in the circumstances.

**Count V**

**Violation of 42 U.S.C. Sec. 1981**

**Race Discrimination and Retaliation**

Hodge incorporates by reference Paragraphs  one through thirty-one as if fully stated herein.

32. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other."

33.     Hodge and a Caucasian colleague were employed with United Airlines through an express or implied employment contract.  United Airlines established a non-discrimination policy and equal treatment of employees and a disciplinary and grievance process which requires notice and an opportunity to be heard on grievances before issuance of a final decision.  On February 18, 2005, management conducted a hearing, charging Mr. Hodge with unauthorized absence from work, invalid sick leave, and failure to comply with a written directive.  Mr. Hodge was terminated on March 10, 2005.  At the same time Mr. Hodge was issued charges by United, a similarly situated Caucasian male employee was absent from work without leave.  Unlike the Caucasian colleague who was took unauthorized leave and was given an opportunity to address and resolve

charges before proceeding to a hearing, Mr. Hodge was terminated immediately on March 10, 2005 without the same process afforded the Caucasian employee, and terminated for discriminatory reasons.

34.     Defendant United Airlines violated Mr. Hodge's rights under 42 U.S.C. § 1981 in the making and enforcing of a contract by terminating Mr. Hodge but continuing to employ a Caucasian employee who was charged with the same offense, and retaliating against Mr. Hodge for making a complaint of racial discrimination.

Wherefore, Hodge requests the Court's judgment and requests that the Court:

a.     Find that United Airlines violated Mr. Hodge's rights under § 1981, reinstate Hodge to employment in the position he held prior to his termination, and award monetary damages against Defendant;

b.  Provide Hodge all lost earnings and benefits associated with his employment. Hodge demands back pay through the date of his reinstatement, restoration of all other job-related benefits, and compensation for the losses thereof;

c.  Award the costs of litigation, including attorneys fees, costs, and expert fees, and such other and further relief as may be appropriate and fair in the circumstances.

Respectfully submitted,

*/s/ David A. Branch*

David A. Branch #438764
Law Offices of David A. Branch, PC
1825 Connecticut Avenue, N.W.
Suite 690
Washington, D.C.  20009
(202) 785-2805 phone
(202) 785-0289 fax

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all counts.

## Certificate of Service

I hereby certify this 27th day of June 2008 that a copy of the foregoing Plaintiff's

First Amended Complaint was sent via electronic mail to counsel for the Defendant at the

address listed below:

Michael A. Viccora
Seyfarth Shaw LLP
815 Connecticut Ave., N.W.,
Suite 500, Washington, D.C. 20006
Phone: (202) 828-3573
Fax: (202) 641-9273

/s/
_____

David A. Branch